# EXHIBIT 1-A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

EUGENE SCALIA, Secretary of Labor,
United States Department of Labor,[1]                    CASE NO. 3:18-cv-908-J-32MCR

                      Plaintiff,

v.

LOCAL   1408,   INTERNATIONAL
LONGSHOREMEN'S   ASSOCIATION,
AFL-CIO,

                      Defendant.

_____/

## DECLARATION OF BRIAN A. PIFER

I, Brian A. Pifer, am the Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), United States Department of Labor ("Department"). The Department supervised an election of officers of the International Longshoremen's Association Local 1408 ("Local 1408"), which was held on December 9, 2019, pursuant to a Stipulation for Compromise Settlement and Order entered July 9, 2019 by the Court ("the supervised election").

OLMS received a post-election protest, which it investigated and resolved prior to certifying the election, as described below. The supervised election included new elections for the positions of President, Vice President, Financial Secretary, Treasurer, Recording Secretary, Business Agent, and five Executive Board members.[2]

---

[1] As of September 30, 2019, Eugene Scalia, who is serving as the Secretary of Labor, is automatically substituted as the Plaintiff in place of former Secretary R. Alexander Acosta in his official capacity in accordance with Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Three Auditor positions were also included in the election. The position of Auditor is not an "officer" as defined in the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), and is thus not subject to the election provisions under the LMRDA. Therefore, the Department does not list the Auditor race in its Certification of Election.

1

A. Election Process

The Pre-Election Conference was held on September 25, 2019 at 400 W. Bay Street, Jacksonville, Florida.  At this meeting, the rules for the conduct of the election were established. All interested parties were invited to attend.

On October 4, 2019, a combined notice of nominations and election was mailed to each member at their last known home address.  On October 11, 2019, a copy of the General Rules for Electing Officers was mailed to all interested parties.

In accordance with Local 1408's bylaws, the nominations meeting was held on November 4, 2019 following Local 1408's regularly scheduled membership meeting.  After the nominations meeting, the Election Committee determined nominee eligibility.  Three nominees were ruled ineligible to run for office because they were not current in their dues, and thus were not members in continuous good standing for the two-year period preceding their nomination, as required by the Local 1408 bylaws and the General Rules for Electing Officers.  Each of these members was provided with a letter explaining their disqualification.  There were no timely complaints regarding the conduct of the nominations.

A candidates meeting was held on November 13, 2019 at Local 1408's union hall.  At the conclusion of the candidates meeting, the candidates' ballot positions were determined by random draw, and all candidates were given the opportunity to submit a form stating how they would like their name to appear on the ballot.  On November 15, 2019, a total of 1,000 ballots were printed and electronically verified at the Jacksonville City Hall print shop.  Election Supervisor Matthew Millane ("Election Supervisor Millane") hand-counted and verified the ballots; the ballots were then secured at the Tampa Resident Investigator Office until the day of the election.

The supervised election was conducted on December 9, 2019, with members voting at a single polling site. A total of 725 ballots were cast. Forty-five ballots were voided,[3] and 3 challenged ballots were unresolved; as such, a total of 677 valid ballots were tallied. Following the closing of the polls, one observer, two members of the Election Committee (including the Chairman Curtis Watson), and Election Supervisor Millane signed a ballot tally certification. The election results were posted in the union hall immediately following the election.

George "Full Service"[4] Spencer ("Spencer") was elected President of Local 1408, with a margin of victory of 19 votes. Nathaniel "Chess" Gardner was elected Vice President, with a margin of victory of 83 votes. Jann Clark was elected Recording Secretary and Financial Secretary Treasurer, with a margin of victory of 177 and 43 votes, respectively. Tarrance "Silk" Gilbert was elected Business Agent, with a margin of victory of 31 votes. The five Executive Board members elected were Reginald L. Williams, Lorenzo "Peachman" Spencer, Pat Brown, Big Jeff Harris, and Shurmarr Big Bailey. The margin of victory between the fifth place and sixth place candidate for Executive Board was 24 votes. In accordance with Local 1408 bylaws, the newly elected officers were installed during the third week of January 2020.

### B. Election Protest

The General Rules for Electing Officers provided for a 10-day period for election protests. The deadline for submitting protests was December 19, 2019. OLMS received one written complaint during the protest period from Vincent Cameron ("Cameron") on December 19, 2019. The Department investigated the allegation in the protest as described below.

Allegation: Presidential candidate Cameron alleged that Spencer paid back dues for five named Local 1408 members in exchange for votes in the supervised election.

---

[3] The majority of these ballots were voided because the member voted for too many candidates.
[4] The candidates' names appear here precisely as they appeared on the ballot.

<u>Response:</u> Section 401(e) of the LMRDA provides that every member in good standing is entitled to one vote. 29 U.S.C. § 481(e).  Per the Constitution and Rules of Order of the International Longshoremen's Association, AFL-CIO ("ILA Constitution"), a "member in good standing" includes any person who is current in their dues.  Additionally, Article XIII, Section 1(b) of the ILA Constitution permits members who are delinquent in their dues to pay their dues owed on election day and vote.[5]

Section 401(e) of the LMRDA also provides that every member in good standing has the right to vote for the candidate(s) of his or her choice, without being subject to improper interference of any kind. *Id.*  Section 401(c) additionally requires that there be adequate safeguards to ensure a fair election. 29 U.S.C. § 481(c).  The Department's regulation at 29 C.F.R. § 452.110 explains that the conduct of an election is circumscribed "by a general rule of fairness." 29 C.F.R. § 452.110(a).  Under these rules, the practice of "buying votes" is unlawful.

At the outset, the smallest margin of victory in the election was 19 for the position of President.  As such, Cameron's allegation that Spencer bought votes from five Local 1408 members, even if true, could not have affected the outcome of the election.

Furthermore, the Department's investigation established that it is a common practice in Local 1408 for members to pay other members' dues and dues arrearages, primarily for purposes of receiving the benefits of being a member in good standing (*e.g.*, the right to vote in elections, a free turkey in November).  The Department's investigation revealed one member identified in Cameron's complaint who asked Spencer to loan her $700 to pay her dues arrearages; this member agreed to pay Spencer back.  Spencer loaned the member the money; the member

---

[5] Article XI, Section 16 of Local 1408's bylaws provides that a member must be current in their dues no later than fourteen days prior to the date of the election. However, Article XII, Section 5 of the ILA Constitution provides that "[i]n the event of a conflict between the by-laws of a local union and the provisions of this Constitution . . . then such by-laws shall be null and void to the extent only of such conflict . . . ."

subsequently paid Spencer back two days later.  At no point did Spencer and the member discuss voting.  Investigators were unable to contact any of the other members identified in Cameron's complaint.  Given the smallest margin of victory in the election was 19, even to the extent a violation occurred, it could not have affected the outcome of the election.

The Department has concluded from its investigation of this protest that Local 1408's December 9, 2019 election of officers, conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with Local 1408's constitution and bylaws and the LMRDA.  Therefore, the results of this supervised election should be certified by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 25th of February, 2020, in the City of Washington, District of Columbia.


Brian A. Pifer, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor